IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

HUNTER REED, *et al.*,       :
                             :
    Plaintiffs,             :    Case No. 2:17-cv-168
                             :
v.                           :    JUDGE ALGENON L. MARBLEY
                             :
FRANK BOVE,                  :    Magistrate Judge Vascura
                             :
    Defendant.              :

## OPINION & ORDER

This matter is before the Court on Defendant Frank Bove's Motion for Summary Judgment. (ECF No. 33). The Reeds are suing Frank Bove for negligence. For the reasons that follow, this Court **GRANTS** Defendant's Motion.

### I.    BACKGROUND

#### A.  Factual Background

This case arises from an ATV accident in Meigs County, Ohio. On April 23, 2015, Frank Bove arrived at James and Terry Reed's property. Mr. Bove was interested in purchasing some of the Reeds' property. Because Mr. Reed was unavailable to meet Mr. Bove and show him the property, Mr. Reed's minor son, Hunter, met Mr. Bove instead. (ECF No. 3 at ¶¶ 4–8).

The Reed's property is expansive. The Reeds allege that they told Mr. Bove he would need to bring an ATV with him when he visited the property. Mr. Bove did not do so. (ECF No. 3 at ¶¶ 6–10). Hunter Reed had one ATV available and looked for another ATV when Mr. Bove arrived. (Id. at ¶¶ 11, 13). Finding only one ATV, Reed and Mr. Bove decided they would both ride the same ATV. Reed was sitting in the front and was driving the ATV. (ECF No. 33-1 at 2; ECF No. 3 at ¶ 21). Reed and Mr. Bove descended a hill, and Reed lost control of the ATV.

1

Reed alleges that Mr. Bove "became agitated, excited and/or attempted to take control of the" vehicle. (ECF No. 3 at ¶ 21). The ATV crashed and both Bove and Reed were injured.

### B. Procedural Background

Hunter Reed, James Reed, and Terry Reed sued Mr. Bove and other unidentified defendants in the Meigs County Court of Common Pleas in January 2017. Hunter Reed claimed compensatory and punitive damages against the Defendants for negligence. Terry and James Reed claimed damages for negligent infliction of emotional distress and loss of consortium. Bove removed the case to this Court on February 27, 2017, invoking this Court's diversity jurisdiction. (ECF No. 1).

Mr. Bove then filed a Motion for Summary Judgment. (ECF No. 33). James and Terry Reed dismissed their claim for negligent infliction of emotional distress. (ECF No. 41). The Motion for Summary Judgment is fully briefed and ripe for review.

## II. STANDARD OF REVIEW

A federal court sitting in diversity jurisdiction applies the federal standard for summary judgment. *See Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

The party seeking summary judgment bears the initial burden of presenting law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If the moving party satisfies this initial burden, then the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992).

Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). The mere existence of a scintilla of evidence in support of the opposing party's position is not enough to survive summary judgment; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). It is proper to enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the nonmoving party has "failed to make a sufficient showing on an essential element of her case

with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322 (quoting *Anderson*, 477 U.S. at 250).

### III. LAW & ANALYSIS

Mr. Bove filed a Motion for Summary Judgment on three grounds: (1) the Reeds were required to file any claims against him as compulsory counterclaims in his earlier-filed state lawsuit; (2) Mr. Bove was not negligent; and (3) the negligent infliction of emotional distress claims should be dismissed. (ECF No. 33-1 at 6). This last argument is now moot because the Reeds have voluntarily dismissed their negligent infliction of emotional distress claim.

### A. The Reeds' Claims Are Not Barred

Defendant, Frank Bove, sued the Reeds in Meigs County Court of Common Pleas on June 29, 2016. (ECF No. 33 at 7). The Reeds then filed the current case in January 2017. On October 25, 2017, the parties stipulated to dismiss the Meigs County case with prejudice because the parties had settled their claims. At the time of the stipulated dismissal, the Reed's case was pending in this Court. The stipulation explicitly stated that "[t]he release and dismissal entry shall not have collateral estoppel or res judicata effect in the case pending in Federal Court as to the claims of the Reeds against Bove." (ECF No. 42 Ex. A).

Defendant argues that the Reeds are barred from bringing their claims in this action because they did not bring them as compulsory counterclaims in the Meigs County case. Defendant makes his argument based on waiver, under Ohio Rule of Civil Procedure 13(A), but Plaintiffs have mainly addressed the application of res judicata. Ohio courts have spoken of the Rule 13(A) bar in terms of both waiver and res judicata. *See, e.g.*, *Lujan v. Smith*, C.A. NO. L-83-197, 1983 WL 6990 (Ohio Ct. App. 1983) ("Although some courts may hold otherwise, it is quite clear that in Ohio, the bar which operates from the failure to assert a compulsory

4

counterclaim, as required by Civ. R. 13(A) is one of res judicata rather than waiver or estoppel."); *Faris v. Fike*, No. 99 CO 44, 2000 WL 1222226 (Ohio Ct. App. Aug. 23, 2000) ("If a counterclaim meets the two-part test, then it must be raised in the pleading or it is waived."); *Bowman v. Bowman*, No. 17829, 2000 WL 262630, at *5 (Ohio Ct. App. Mar. 10, 2000) (nothing that "[i]n most instances, application of either res judicata or waiver principles will yield the same result, but . . . we prefer the flexibility of a waiver analysis to the more rigid rules applicable to res judicata."). Because res judicata is an affirmative defense that is waived if not asserted, this Court will address only the issue of waiver.

A federal court "must give the same effect to a state court judgment that would be given by a court of the state in which the judgment was rendered." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (quoting *Hospital Underwriting Grp, Inc. v. Summit Health Ltd.*, 63 F.3d 486, 494 (6th Cir. 1995). Thus, this Court applies Ohio law in deciding whether the Reeds' claims are barred.

Under Ohio Rule of Civil Procedure 13, a compulsory counterclaim is

> any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Ohio R. Civ. P. 13(A).

Thus, a claim is a compulsory counterclaim if it meets two requirements: (1) "the claim exist[s] at the time of serving the pleading" and (2) "the claim arise[s] out of the transaction or occurrence that is the subject matter of the opposing claim." *Geauga Truck & Implement Co. v. Juskiewicz*, 457 N.E.2d 827, 829 (Ohio 1984). Plaintiffs concede that their claims arise out of the same occurrence as the first suit. (ECF No. 42 at 5). Plaintiffs' claims also existed when the first case was filed as both cases arose out of the same, discrete incident. But the Reeds

5

answered without raising a counterclaim. (ECF No. 43 at 5). Thus, the Reeds' claims are compulsory counterclaims that they were required to bring in the Meigs County case.

Generally, "[c]ompulsory counterclaims under Civ. R. 13(A) must be litigated in the original action or are forever barred." *Myocare Nursing Home, Inc. v. Hohmann*, 8th Dist. Cuyahoga No. 104290, 2017-Ohio-186, at ¶ 7 (citing *Huntington Natl. Bank v. Dixon*, 8th Dist. Cuyahoga No. 101273, 2015-Ohio-1735, at ¶ 6). *See also Dixon v. Huntington Bank*, 8th Dist. Cuyahoga No. 100572, 2014-Ohio-4079, at ¶ 31 ("A party who fails to assert a compulsory counterclaim at the proper time is barred from litigating that claim in a subsequent lawsuit."); *Columbus Metro. Cmty. Action Org. v. Enyart*, No. 94APE12-1802, 1995 WL 422648, at *3 (Ohio Ct. App. July 13, 1995) (noting that failure to bring a compulsory counterclaim "constitutes a waiver"). Rule 13 is designed "to resolve all the parties' grievances flowing from the same facts and circumstances in a single action." *Myocare Nursing Home, Inc.*, 2017-Ohio-186, at ¶ 10. And, "[b]ecause dismissals of compulsory counterclaims are presumed to be with prejudice, even if the parties state the dismissal is without prejudice, typically the dismissal is final because all claims are forever resolved." *Id.* at ¶ 9. Indeed, as one Ohio Court of Appeals put it, "[i]t is the failure to present the compulsory counterclaim that waives it, not the manner of disposition of the prior suit." *Goldberg v. Virginia Holding Corp.*, NO. 43733, 1982 WL 5914, at *4 (Ohio Ct. App. Aug. 26, 1982) (citing *Dindo v. Whitney*, 451 F.2d 1, 3 (1st Cir. 1971)). Even the United States Supreme Court has remarked "that Ohio courts . . . have applied preclusion concepts more broadly than in the past." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 86 (1984).

But, more recently, some authorities have favored applying waiver principles to compulsory counterclaims rather than res judicata. Waiver "provides a more useful approach to

the problem of omitted counterclaims than does the doctrine of claim preclusion," because "[f]or example, it affords a means of extricating a defendant who has not knowingly refrained from asserting a claim from the rigors of the compulsory-counterclaim rule . . . ."  6 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 1417 (3d ed. 2019).  This may be especially so "when an insurance company has controlled the defense of the first action" or where the prior case "result[ed] in a default judgment, a consent judgment, or a dismissal after a settlement agreement." *Id.*  At least one Ohio court likewise has "prefer[red] the flexibility of a waiver analysis to the more rigid rules applicable to res judicata." *Bowman v. Bowman*, No. 17829, 2000 WL 262630, at *5 (Ohio Ct. App. Mar. 10, 2000).

Few courts have applied a waiver analysis to save a plaintiff's counterclaim that would otherwise be barred.  Plaintiffs rely on *Tyler v. DH Capital Mgmt., Inc.*, but *Tyler* is inapposite.  The Sixth Circuit in *Tyler* found that, under the Kentucky Rules of Civil Procedure, a compulsory counterclaim was not barred where the case was dismissed within the timeframe for amending an answer "as a matter of course." *Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 461 (6th Cir. 2013).  That is not the case here where the Reeds filed the current case some six months after Bove initiated his suit in state court and dismissed the first case over one year after Bove filed his initial complaint.

The Reeds represented at the Summary Judgment hearing that they had insurance counsel on the first case, but this Court has no additional facts as to how the defense was conducted.  The fact that insurance counsel was on the first case is not enough to determine whether the Reeds, in fact, were not able to litigate their counterclaims in the first action.  Furthermore, because this fact was not raised until the Summary Judgment hearing itself, Bove did not have adequate opportunity to address the assertion.

Complicating matters in this case is the language in the stipulation stating that the dismissal "shall not have collateral estoppel or res judicata effect in the case pending in Federal Court as to the claims of the Reeds against Bove." (ECF No. 42 Ex. A). It remains an open question "whether a defendant is estopped from asserting Civ.R. 13(A) as a bar to plaintiff's claim where, in the earlier action, the defendant had consented to a dismissal without prejudice and the refiling of the claim." *Rettig Enters., Inc. v. Koehler*, 626 N.E.2d 99, 102 n.1 (Ohio 1994)). *See also Myocare Nursing Home, Inc.*, 2017-Ohio-186, at ¶ 8 ("We are not rendering any decision with regard to whether parties may contract around Civ.R. 13(A) in order to convert an interlocutory order into a final appealable judgment."). Ultimately, the *Myocare* court decided that parties could not invoke appellate jurisdiction by conditionally dismissing a counterclaim. *Id.* at ¶ 14 ("As a result, we must find that the conditional dismissal of the counterclaim in this case is a nullity."). But that does not bear on whether the parties could agree that a compulsory counterclaim would not be barred.

While no Ohio cases have squarely addressed the issue, at least one Ohio Court of Appeal has considered the effect of a provision in a settlement agreement similar to the provision here and found that such language permitted the claims in the second suit to proceed. *See Roth v. Glueck*, 1st Dist. Hamilton No. C–110780, 2012-Ohio-4407, at ¶ 37 (finding that language in settlement agreement that nothing in the agreement "appl[ied] to, bar[red] or limit[ed] the claims asserted by either party in Hamilton County Court of Common Pleas" did not bar claims in the second suit). Bove argues that the language in the stipulated dismissal has nothing to do with whether the Reeds waived their claims. The Reeds, however, argue that Bove waived his defense that the counterclaims are barred.

The Ohio Supreme Court has held in an analogous context that a defendant can waive the right to object to two suits against him on separate theories of liability from the same event. *Shaw v. Chell*, 199 N.E.2d 869, 874 (Ohio 1964). Additionally, parties may waive the affirmative defense of waiver by contract. *See Frank B. Thomas Trust v. Imperial 400 Nat., Inc.*, No. 14202, 1990 WL 34872, at *3 (Ohio Ct. App. Mar. 28, 1990) (finding that an "anti-waiver" lease provision "preclude[ed] the waiver defense.").

This Court finds that a waiver analysis of Ohio's Rule 13(A) bar on unraised counterclaim is appropriate here. Res judicata and waiver are separate defenses. Nevertheless, the parties attempted to agree, in their stipulated dismissal, that the claims in this case could go forward. Therefore, the Reeds' claims are not barred. It makes no difference, at this stage of the case and on these facts, whether the Reeds' claims are barred because their claims fail on the merits.

## B. Reed's Negligence Claims Fail

The Reeds have alleged that Bove was negligent because while Frank Bove and Hunter Reed were on the ATV, Bove "became agitated, excited, and/or attempted to take control of the [ATV]" and, in doing so, caused the ATV crash. (ECF No. 33-1 at 8, citing Compl. ¶¶ 21 – 22). In the Reeds' Response in Opposition to Summary Judgment they raised the theory, for the first time, that Bove was negligent in giving aid to Hunter Reed after the accident. Both claims fail.

*1. Negligence Based on Bove's Actions While Riding the ATV*

Bove first argues that he is entitled to summary judgment on Hunter Reed's claim that Bove was negligent because of his actions while on the ATV. Bove moves for summary judgment based on the absence of any evidence supporting the allegation that he "did anything to cause this accident, or for Mr. Reed to lose control of the ATV." (ECF No. 33-1 at 29). Bove

points to Hunter Reed's deposition in which he states that he "just lost all control of" the ATV. (ECF No. 33-1 at 29). Nowhere does Reed allege that Bove did something while on the ATV to cause the crash. Nor does Bove state that he took any action while on the ATV. Reed and Bove were the only two individuals present at the time of the crash.

In Response, Reed merely asserts that "Defendant did not meet its burden to establish that there are no genuine issues of material fact" and then pivots to asserting that Bove was negligent because of "the reasonableness of Defendant's actions after voluntarily undertaking to provide aid to Plaintiff after the accident." (ECF No. 42 at 7).

Once the moving party on summary judgment points to a lack of evidence to support a claim, it is the nonmovant's burden to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). A mere scintilla of evidence will not do; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

Bove has met his burden of showing an "absence of evidence to support [Reed's] case." *Celotex Corp.*, 477 U.S. at 325. Because Reed failed to point to any evidence that would support his claim that Bove was negligent in trying to take over the ATV, Reed's claim cannot survive summary judgment.

*2. Negligence Based on Giving Aid*

In his Response to Summary Judgment, Reed raised the possibility that Bove was negligent in his "actions after voluntarily undertaking to provide aid to Plaintiff after the accident." (ECF No. 42 at 7). Bove objects to Reed's ability to raise this theory of liability because it was not raised in the complaint or investigated during discovery. As Bove notes, this

10

theory of liability would require additional discovery on how Reed's injury might have been exacerbated by Bove's alleged negligence in seeking aid.

It is far too late for Reed to raise this theory of liability. Reed's Complaint did not raise the theory that Bove was negligent in rendering aid to Reed. The Complaint merely stated that Bove "left the scene of the crash and walked back to the residence of the Plaintiff." (ECF No. 3 at ¶ 23). This allegation does not raise any actions, or inactions, on Bove's part to aid Mr. Reed, nor does it even say that Bove left to seek help.

Furthermore, Reed pointed to almost no evidence in support of his claim of negligence in rendering aid. Under Ohio law, "a bystander has no affirmative duty to aid or protect another absent a special relationship justifying the imposition of a duty." *Carter v. Reese*, 148 Ohio St. 3d 226, 2016-Ohio-5569, 70 N.E.3d 478, at ¶ 18. But, "one who voluntarily and gratuitously renders services to another for the protection of the other person is liable at common law for injuries resulting from his failure to exercise reasonable care under the circumstances." *Id.* Ohio generally follows § 323 of the Restatement Second of Torts. *See Fishpaw v. Francisco*, 10th Dist. Franklin No. 05AP-861, 2006-Ohio-3450, at ¶¶ 30–32 (noting that Ohio courts have applied § 323 in two contexts: first through the "loss-of-chance" doctrine and second through voluntarily undertaking to help another). Under § 323

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323.

To prevail under § 323(a), the increased risk of harm must be measured against "the risk that would have existed had the defendant never provided the services initially." *Wheatley v. Marietta College*, 2016-Ohio-949, 48 N.E.3d 587, at ¶ 92 (4th Dist.) (internal citations omitted). That is, the "negligent performance must somehow put the plaintiff in a worse situation than if the defendant had never begun the performance." *Id.* Generally, this requires "sins of commission rather than omission." *Wissel v. Ohio High School Athletic Ass'n*, 605 N.E.2d 458, 465 (Ohio Ct. App. 1992) (*quoting Turre v. Government of the Virgin Islands, Virgin Islands Water & Power Auth.*, 938 F.2d 427, 432 (3d Cir. 1991)). Under § 323(b), the plaintiff's reliance must usually be "based on specific actions or representations which cause the person[] to forego other alternatives of protecting themselves." *Wissel*, 605 N.E.2d at 465 (*quoting Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 807 (Minn. 1979)).

Reed has adduced no facts to support a claim of negligence. The entirety of Reed's evidence for his claim is the following portion of his deposition:

> I think we hit—I think we hit like—I don't know, an embankment where the path comes up. Everything was just kind of a blur of what happened between then. I remember laying there. I guess I wrapped around the tree or something because I was kind of laying beside it. My side hurt really bad. I tried to walk. I collapsed. I remember seeing Frank got up. He was walking. He said he would be back for help. I don't know if he could tell I was—and then I laid there and like I guess I passed—I was unconscious, passed out. I remember waking up and waited and waited and I decided that I was going to have to save myself, so I just started walking.

(ECF No. 42 Ex. B).

Reed's deposition testimony does not rise to more than a mere scintilla of evidence required to defeat a motion for summary judgment. Reed could not maintain a claim that Bove should have attended to Reed immediately instead of going for help because generally, there is no duty to aid others. Reed does not allege that because of Bove, he waited longer than he would

have otherwise. *See Monateri v. Polito, Zebark, Inc.*, 1992 WL 387363, at *5 (Ohio Ct. App. Dec. 18, 1992) (finding that, even if an eight-minute delay in emergency personnel arriving was negligent, the plaintiff submitted no evidence "that the delay caused [her] harm which she would not have suffered had [defendant] acted earlier."). Nor does Reed allege that Bove took some sort of affirmative action that put Reed in a worse position. Therefore, Reed cannot proceed on a theory of increased risk of harm under § 323(a).

Reed does appear to have relied on Bove's representation that he was going to seek help. But Reed does not allege any physical injuries that resulted because of such reliance. Because of these deficiencies, Reed cannot survive summary judgment on a claim under § 323 (b).

### C. Loss of Consortium Claims

The only remaining claims are James and Terry Reed's claims for loss of consortium. Neither party explicitly addressed the Reeds' loss of consortium claims, and generally, a district court must give notice to the opposing party before entering summary judgment *sua sponte*. *See Doyle v. City of Columbus*, 120 F. App'x 560, 564–65 (6th Cir. 2004). But, the *sua sponte* grant of summary judgment has been upheld where the party was not prejudiced by the court's failure to give notice. *See id.* at 565. In *Doyle*, a panel of the Sixth Circuit upheld the grant of summary judgment to the defendant, without notice, where the plaintiff had requested "Judgment as a Matter of Law on all of Plaintiff's Claims," and two of the three defendants had "clearly moved for summary judgment on all Ohio claims." *Id.* The *Doyle* Court found that, because of the summary judgment motion of those two defendants, "Plaintiff was put on notice to come forward with all evidence to support his state law claims." *Id.*

Here, Bove moved for "summary dismissal from the current lawsuit." (ECF No. 33 at 1). Bove argued that "Plaintiffs' Complaint should be dismissed" and that "Defendant is entitled to

13

judgment as a matter of law on all of Plaintiffs' claims." (ECF No. 33-1 at 6). Additionally, the substance of Defendant's Motion for Summary Judgment referred to "Plaintiffs" as unable to "point to any evidence that supports a finding that Mr. Bove did anything to cause this accident, or for Mr. Reed to lose control of the ATV." (ECF No. 33-1 at 8). Defendant's Motion for Summary Judgment thus sufficed to put Plaintiffs on notice that they should put forward all the evidence to support their claims. Because "[a] loss of consortium claim is a derivative cause of action dependent upon the existence of a primary cause of action," *Miller v. City of Xenia*, No. 2001 CA 82, 2002 WL 441386 (Ohio Ct. App. Mar. 22, 2002), the Reeds' claims for loss of consortium fail upon entry of Summary Judgment in favor of Bove.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is hereby **GRANTED.**

**IT IS SO ORDERED.**

                                                                        s/ Algenon L. Marbley
                                                                      **ALGENON L. MARBLEY**
                                                                      **UNITED STATES DISTRICT JUDGE**

**DATED: August 12, 2019**